

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| INTEGRATED ENERGY HOLDINGS, LLC, a South Dakota Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>BUENA VISTA BIOMASS DEVELOPMENT, LLC, a Delaware Limited Liability Company; BUENA VISTA BIOMASS POWER, LLC, a California Limited Liability Company; OTOKA ENERGY CORPORATION, a Delaware Corporation; and STRATEGIC ENERGY CONCEPTS, LLC, a Missouri Limited Liability Company,<br><br>Defendants. | CIV. #09-4165<br><br>**COMPLAINT**<br>-and-<br>**DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff Integrated Energy Holdings, LLC, by and through its attorneys of record, and for this Complaint against the above-named Defendants, do hereby state and allege as follows:

## PARTIES.

1.  Plaintiff Integrated Energy Holdings, LLC is a South Dakota limited liability company with its principal place of business in Sioux Falls, South Dakota.

2.  Plaintiff alleges upon information and belief that Defendant Buena Vista Biomass Power, LLC ("BVBP"), is a California limited liability company, with its principal place of business in Ione, California, and is a wholly-owned subsidiary of Defendant Buena Vista Biomass Development, LLC ("BVBD"), a Delaware limited liability company, with its principal place of business in Katy, Texas. Upon information and belief, before September 21, 2009,

Strategic Energy Concepts, LLC ("SEC") was the sole member of BVBD. Upon information and belief, as of approximately September 21, 2009, BVBD acquired one hundred percent (100%) of BVBP in a transaction with the Oneto Group, Inc., and, in a second transaction occurring immediately after the Oneta Group transaction, SEC sold a sixty-seven percent (67%) interest in BVBD to Otoka Energy Corporation ("Otoka").

3. Plaintiff alleges upon information and belief that Defendant Otoka Energy Corporation is a Delaware corporation with its principal place of business in Bloomington, Minnesota, and it currently owns a sixty-seven percent (67%) interest in Defendant BVBD.

4. Plaintiff alleges upon information and belief that Defendant Strategic Energy Concepts, LLC, is a Missouri limited liability company, with its principal place of business in Katy, Texas, and it owns a thirty-three percent (33%) interest in BVBD.

## JURISDICTION AND VENUE

5. This is a diversity action between citizens of different States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and because complete diversity exists between the parties.

6. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this District.

## INTRODUCTION

7. This case arises out of a contract executed on or about July 29, 2009 between Integrated Energy Holdings, LLC ("IEH") and Buena Vista Biomass Development, LLC ("BVBD") in the form of a binding Letter of Intent, an unsigned copy of which is attached hereto and incorporated herein as **Exhibit A**. The agreement gave IEH the right to supply fuel to an

approximately 18 megawatt, biomass-fueled electric generation facility, located at 4655 Coal Mine Road, Ione, California (the "Project Location"), which was to be owned and operated by BVBD's wholly owned subsidiary, Buena Vista Biomass Power, LLC ("BVBP"). Among other things, this agreement bound the Defendants to "work exclusively with IEH within the Exclusive Territory to source the Fuel Commodity." **Exhibit A.** As a result of the Defendants' conduct described below, IEH has been denied the benefits of the contract with BVBD and BVBP and relied to its detriment upon the promises made by BVBD and BVBP, all of which caused substantial financial damages to IEH.

## FACTS

8.  Integrated Energy Holdings, LLC, was first registered with the South Dakota Secretary of State on November 14, 2005.

9.  On or about July 29, 2009, IEH and BVBD entered into a binding Letter of Intent giving IEH an exclusive right to work with BVBP to source chipped wood, referred to in the agreement as the "Fuel Commodity," within a two hundred fifty (250) mile radius around the BVBP plant in Ione, California. This contract is attached as **Exhibit A** and incorporated herein.

10. As set forth in the contract, its purpose was to establish "the terms and conditions under which Integrated Energy Holdings. LLC … would source and supply chipped wood (the "Fuel Commodity") to [BVBP]…." **Exhibit A** at 1.

11. The contract also set forth the essential commercial and financial terms of the relationship, including the agreed length of the contract, the minimum and maximum number of tons of fuel to be supplied each year, the price, and delivery terms. In addition, the parties agreed that "On or before December 31, 2009, BVBD will cause BVBP to enter into a Fuel Supply Agreement (the "Fuel Contract") with IEH, incorporating the terms and conditions set

forth below, along with other customary terms and conditions as the parties may agree upon."

**Exhibit A** at 1.

12. The contract contains a strict, binding and enforceable exclusivity provision, which provided as follows:

> **Exclusivity**   In consideration for the material IEH commitment of time, resources and capital investment to support the Fuel Contract, BVBP will grant IEH an exclusive territorial Fuel Commodity sourcing area that will encompass a two hundred fifty (250) mile radius around the Project Location (the "Exclusive Territory"). In this regard, BVBP agrees that it shall work exclusively with IEH within the Exclusive Territory to source the Fuel Commodity.

13. In reliance upon the terms of the contract, IEH has partially performed under the contract by purchasing approximately 22,000 tons of forest residuals in anticipation of the plant commencing commercial operation in mid-summer 2010, as well as by commencing negotiations with third parties to process, load and deliver the fuel to BVBD and BVBP's Ione, California plant.

14. On or about December 9, 2009, the Defendants informed IEH that they deny the existence of the written agreement, that they will not comply with the terms of the parties' contract and directed IEH to stop procuring fuel for BVBD and BVBP's Ione, California plant.

15. Plaintiff has suffered extensive financial damages as a result of the Defendants' conduct.

## COUNT I – BREACH OF CONTRACT (EXPRESS OR IMPLIED)

16. The Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

17. The July 29, 2009 Letter of Intent between IEH and BVBD and BVBP was a binding and enforceable express or implied contract.

18. This agreement between the parties in July of 2009 regarding IEH supplying fuel

4

to the BVBP plant in Ione, California was expressed in words and/or manifested by the conduct of the parties.

19. Upon information and belief, Defendants BVBD and BVBP breached the exclusivity provision contained in the sixth paragraph of page 2 of the Letter of Intent by, inter alia, working, negotiating or discussing the purchase or sourcing of chipped wood or Fuel Commodity, with a competing entity within a two hundred and fifty mile radius of the Ione, California plant.

20. As a direct result of BVBD and BVBP's breach of the Letter of Intent, Plaintiff IEH suffered damages, including (but not limited to) loss of the right to sell and supply the Fuel Commodity, up to a maximum of 50,000 bone dry tons each year over a five year period, lost revenues and profits, loss of goodwill and business reputation, lost time, expenses, fees, costs and substantial financial expenditures in an amount exceeding $75,000.

21. IEH altered its position to its detriment in the reasonable belief that the promises would be performed. In reliance upon the promises related to the purchase of Fuel Commodity by BVBD and BVBP, IEH incurred costs related to the purchase of 22,000 tons of forest residuals, and other financial expenditures, as well as lost revenue from turning away of other potential business and customers.

## COUNT II –BREACH OF CONTRACT (EXPRESS OR IMPLIED)

22. The Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

23. The July 29, 2009 Letter of Intent between IEH and BVBD and BVBP was a binding and enforceable express or implied contract, which was partially performed by IEH.

24. This agreement between the parties in July of 2009 regarding IEH supplying fuel

to the BVBP plant in Ione, California was expressed in words and/or manifested by the conduct of the parties.

25. BVBD and BVBP breached the agreement by denying the existence of the contract, directing IEH to not procure any additional fuel pursuant to the terms of the contract and by informing IEH that BVBD and BVBP do not intend to purchase the agreed upon Fuel Commodity from IEH.

26. As a direct result of BVBD and BVBP's breach of the Letter of Intent, Plaintiff IEH suffered damages, including (but not limited to) loss of the right to sell and supply between 40,000 and 50,000 bone dry tons of the Fuel Commodity each year over a five year period, lost revenues and profits, loss of goodwill and business reputation, lost time, expenses, fees, costs and substantial financial expenditures in an amount exceeding $75,000.

27. IEH altered its position to its detriment in the reasonable belief that the promises would be performed. In reliance of the promises related to the purchase of Fuel Commodity by BVBD and BVBP, IEH incurred costs related to the purchase of 22,000 tons of forest residuals, and other financial expenditures, as well as lost revenue from turning away of other potential business and customers

## COUNT III - PROMISSORY ESTOPPEL

28. The Plaintiff hereby incorporates all previous paragraphs and incorporates them as if fully set forth herein.

29. In July of 2009, BVBD and BVBP promised IEH that it would purchase from IEH between 40,000 and 50,000 bone dry tons of Fuel Commodity each year for a five-year period of time for the price of $45 per ton, with a two and one-half percent price escalation per year, to be delivered to the BVBP plant in Ione, California beginning in the summer of 2010. BVBD and BVBP subsequently reaffirmed that promise to IEH on several occasions.

30. IEH altered its position to its detriment in the reasonable belief that the promises would be performed. In reliance upon the promises related to the purchase of Fuel Commodity by BVBD and BVBP, IEH incurred costs related to the purchase of 22,000 tons of forest residuals, and other financial expenditures, as well as lost revenue from turning away of other potential business and customers

31. The detriment suffered by IEH, as detailed above, was substantial in an economic sense, the loss to IEH was foreseeable to BVBD and BVBP, and IEH acted reasonably in justifiable reliance on the promise made.

## COUNT IV – VIOLATION OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

32. The Plaintiff incorporates by reference all prior paragraphs as though fully set forth herein.

33. The Letter of Intent between Plaintiff IEH and Defendants BVBD and BVBP contained a covenant of good faith and fair dealing implied by operation of law.

34. The implied covenant of good faith and fair dealing requires honesty in fact between the parties and is designed to protect the spirit of the agreement, when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other the benefits of the parties' bargain.

35. The implied covenant of good faith and fair dealing required BVBD and BVBP to act reasonably to fulfill the intent of the parties to the agreement.

36. BVBD and BVBP owed IEH a duty of good faith and fair dealing as implied in the Letter of Intent.

37. Upon information and belief, BVBD and BVBP breached the implied covenant of

good faith and fair dealing by, inter alia, intentionally and repeatedly frustrating the contractual intent of the parties to work exclusively with IEH to source the chipped wood needed at the Ione, California plant while the parties had a binding exclusivity provision in the agreement, and by working, negotiating or discussing the purchase or sourcing of such fuel with a competing entity while the Exclusivity provision was binding upon the parties.

38.   BVBD and BVBP also breached the implied covenant of good faith and fair dealing by, inter alia, wrongfully denying the existence of the written agreement, informing IEH that BVBD and BVBP would not perform its obligations under the contract and by directing IEH to stop procuring fuel to be delivered under the terms of the contract.

39.   BVBD's and BVBP's actions limited or completely prevented IEH from receiving the reasonably expected benefits of the contract.

40.   BVBD's and BVBP's violations of their obligations of good faith and fair dealing caused substantial economic injury to Plaintiff IEH, including loss of the right to sell and supply the Fuel Commodity, up to a maximum of 50,000 bone dry tons per year over a five year period, lost revenues and profits, lost business and loss of goodwill and business reputation, lost time, expenses, fees, costs and substantial financial expenditures in an amount exceeding $75,000.

41.   IEH altered its position to its detriment in the reasonable belief that the promises would be performed.  In reliance upon the promises related to the purchase of Fuel Commodity by BVBD and BVBP, IEH incurred costs related to the purchase of 22,000 tons of forest residuals, and other financial expenditures, as well as lost revenue from turning away of other potential business and customers

### COUNT V - ANTICIPATORY BREACH BY BUYER'S REPUDIATION OF CONTRACT

42.   The Plaintiff incorporates by reference all prior paragraphs as though fully set

forth herein.

43. On or about July 29, 2009, BVBD and BVBP entered into a binding written contract with IEH wherein they agreed to work exclusively with IEH to source the Fuel Commodity in a 250-mile radius around BVBP's Ione, California plant. They agreed to enter into a contract with IEH for the purchase of a minimum of 40,000 and a maximum of 50,000 bone dry tons of Fuel Commodity each year for a five-year period, at a price of $45 per ton. Delivery was to begin in the summer of 2010 upon the opening of BVBP's plant. A copy of the contract is attached as **Exhibit A**, and incorporated by reference.

44. On or about December 9, 2009, BVBD and BVBP repudiated the contract by unequivocally notifying IEH that they deny the existence of the contract, that they will not perform their obligations under the contract, and that IEH is not to perform any additional work pursuant to the contract, including procuring additional fuel for delivery under the contract.

45. IEH has abided by all of the terms of the contract and was ready and willing to continue procuring fuel to deliver to BVBD and BVBP's project upon the commercial operation of the plant in Ione, California as agreed.

46. BVBD's and BVBP's conduct has caused substantial economic injury to IEH, including loss of the right to sell and supply the Fuel Commodity, up to a maximum of 50,000 bone dry tons per year over a five year period, lost revenues and profits, lost business and loss of goodwill and business reputation, lost time, expenses, fees, costs and substantial financial expenditures in an amount exceeding $75,000.

47. IEH altered its position to its detriment in the reasonable belief that the promises would be performed. In reliance upon the promises related to the purchase of Fuel Commodity by BVBD and BVBP, IEH incurred costs related to the purchase of 22,000 tons of forest

residuals, and other financial expenditures, as well as lost revenue from turning away of other potential business and customers.

## COUNT VI – TORTIOUS INTERFERENCE WITH CONTRACT AGAINST ALL DEFENDANTS

48. Plaintiff realleges all prior paragraphs and incorporates them by reference as if fully set forth herein.

49. IEH had a contractual relationship with BVBD and BVBP.

50. Defendants Otoka and SEC were knowledgeable of IEH's contract with BVBD and BVBP. Otoka and SEC own one hundred percent (100%) of BVBD directly and one hundred percent (100%) of BVBP indirectly.

51. Defendants Otoka and SEC acted intentionally and were unjustified in their actions as owners of BVBD and BVBP in denying the existence of the contract with IEH, caused BVBD and BVBP to violate the Exclusivity term in the contract and otherwise breach the contract.

52. Defendants Otoka and SEC acted out of their personal financial interests when they denied the existence of the contract with IEH, caused BVBD and BVBP to violate the Exclusivity term in the contract and otherwise breach the contract.

53. Defendants Otoka's and SEC's wrongful conduct was the proximate cause of damages to IEH, including, but not limited to the loss of the right to sell and supply the Fuel Commodity, up to a maximum of 50,000 bone dry tons per year over a five year period, lost revenues and profits, lost business and loss of goodwill and business reputation, lost time, expenses, fees, costs and substantial financial expenditures, in an amount exceeding $75,000.

54. The conduct of the Defendants in this case constitutes oppression, fraud, and malice, actual and presumed.

55. Thus, the Defendants are liable for punitive damages in an amount sufficient to punish them and hold them accountable for their wrongful conduct and to deter such conduct in the future.

### COUNT VII – CIVIL CONSPIRACY

56. Plaintiff hereby incorporates by this reference all prior paragraphs as though fully set forth herein.

57. The conduct of all of the Defendants in agreeing together to deny the existence of the written agreement between IEH and BVBD and BVBP, directing the Plaintiff not to perform any additional work pursuant to the agreement, including procuring additional Fuel Commodity for delivery under the contract, causing BVBD and BVBP to violate the Exclusivity term of the contract and repudiate the contract with IEH, is a wrongful conspiracy.

58. IEH suffered damages as a proximate result of the Defendants' conspiratorial conduct in that it lost the right to sell and supply the Fuel Commodity, up to a maximum of 50,000 bone dry tons per year over a five year period, lost revenues and profits, lost business, goodwill and business reputation, lost time, expenses, fees, costs and substantial financial expenditures, in an amount exceeding $75,000.

59. The conduct of the Defendants in this case constitutes oppression, fraud, and malice, actual and presumed.

60. Thus, the Defendants are liable for punitive damages in an amount sufficient to punish them and hold them accountable for their wrongful conduct and to deter such conduct in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for damages against the Defendants as

follows:

(1) For the Plaintiff's compensatory, general, punitive and special damages in an amount as the jury deems just and equitable under the circumstances and commensurate with Plaintiff's losses as sustained herein;

(2) For prejudgment and postjudgment interest; and

(3) For such other and further relief as the Court determines to be just and proper.

Dated this 15th day of December, 2009.

          **JOHNSON, HEIDEPRIEM**
          **& ABDALLAH, L.L.P.**

          BY *Pamela Bollweg*
          Steven M. Johnson (steve@jhalawfirm.com)
          Pamela R. Bollweg (pamela@jhalawfirm.com)
          P.O. Box 2348
          Sioux Falls, SD 57101-2348
          (605) 338-4304

          *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby gives notice of and respectfully demands a trial by jury on all issues so triable.

          *Pamela Bollweg*
          Pamela R. Bollweg